# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| VISTAS DE CANOVANAS I, INC.<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, as Receiver of Doral Bank<br><br>      Defendant. | CIVIL ACTION NO.   16-02568 (CCC) |

## FDIC-R'S OPPOSITION TO MOTION TO REMAND

The Federal Deposit Insurance Corporation ("FDIC"), an agency of the United States of America, in its capacity as Receiver for Doral Bank ("FDIC-R"), hereby opposes the MOTION TO REMAND (ECF No. 7) filed jointly by Plaintiff, Vistas de Canovanas I, Inc., and Third Party Defendant, Ramón Mac Crohon.  (ECF No. 1).  This OPPOSITION is supported by the information set forth below, as well as the entire record in this case.

## I.      BACKGROUND

### A.  The Loan.

On December 20, 2006, Vistas de Canovanas I, Inc., obtained from Doral Bank a loan, identified as Loan Number 80-00000475 (the "Loan"), which was secured by, among other things, a corresponding mortgage note in the amount of $16.675 million (the "Mortgage Note").

### B.  This Lawsuit.

Several years later, in 2009, Vistas de Canovanas I, Inc. ("Plaintiff" or "Vistas") commenced this action by filing a complaint ("Complaint") against Doral Bank in the Court of

First Instance, San Juan Part, Commonwealth of Puerto Rico ("State Court").[1]  Succinctly stated, Vistas alleges that Doral Bank breached certain terms of the Loan by failing to disburse certain funds that Vistas needed to finish constructing a residential housing project in the Municipality of Canovanas (the "Project").  Vistas claims that the alleged breach caused it to suffer $18.5 million in damages. (ECF No. 1-5) [2]

In response to the Complaint, on September 4, 2009, Doral Bank filed an answer denying that it breached any of the terms of the Loan (the "Answer").  At the same time, Doral Bank also filed (i) a counterclaim against Vistas seeking collection of the unpaid loan, which, as of July 29, 2015, totaled more than $8.3 million, and foreclosure of the mortgaged property (the "Counterclaim"); and (ii) a third-party complaint against Ramón Mac Crohon ("Mac Crohon" or "Third-Party Defendant"), who is the principal of Vistas and personal guarantor of the Loan, seeking to collect the full amount owed under the guaranty. (ECF No. 1-6).[3]

## C.  The <u>First</u> Transfer of the Loan.

About four years later, on May 1, 2013, while the parties were litigating the Complaint, Counterclaim, and Third-Party Complaint, Doral Bank transferred its ownership of the Loan to one of its subsidiaries, Doral Recovery II, LLC. (the "First Loan Transfer") (ECF No. 3-1).[4]  Because the Loan had been transferred, Doral Bank – and Doral Recovery II, LLC as the new owner of the Loan – jointly filed in the State Court on October 2, 2013, a motion seeking to substitute Doral Recovery II, LLC into the place of Doral Bank as the Defendant, Counterclaimant, and Third-Party Plaintiff (the "First Substitution Motion").[5]  In response, Vistas and Mac Crohon <u>opposed</u> the substitution and requested that the State Court: (a) order

---

[1] Case Number KAC 2009-0837 (905).
[2] *See also*, Exhibit 1- English translation of the complaint.
[3] *See also*, Exhibit 2- English translation of the Answer, Counterclaim and Third Party Complaint.
[4] *See also*, Exhibit  3- Urgent Motion Regarding Substitution of Party.
[5] *Id.*

Doral Bank to remain a party defendant because it was supposedly liable for the alleged breach of contract and resulting damages; and (b) join Doral Recovery II, LLC, as an additional defendant. (ECF No. 3 page 2).  The State Court, however, never ruled on the First Substitution Motion.

In February of 2014, after significant time had passed without a ruling from the State Court, Doral Bank – in an effort to avoid another objection by Vistas and Mac Crohon and to avoid further delays in the prosecution of the Counterclaim – filed a second motion requesting that Doral Recovery II, LLC be substituted into the place of Doral Bank only as the Counterclaimant and Third-Party Plaintiff seeking collection of the Loan, but not as the Defendant ("Second Substitution Motion").[6]  Importantly, Vistas did not oppose this Second Substitution Motion, and the State Court ultimately subscribed to the party status requested therein, meaning that the State Court thereafter treated Doral Recovery II, LLC as the Counterclaimant and Third-Party Plaintiff, but left Doral Bank as the Defendant

In sum, as of 2014, Vistas was the Plaintiff in this action seeking damages against Doral Bank as the Defendant, Doral Recovery II, LLC was the Counterclaimant and Third-Party Plaintiff seeking collection of the Loan and personal guaranty from Vistas and Mac Crohon, and Mac Crohon was the Third-Party Defendant.

### D.  The Second Transfer of the Loan.

Approximately one year later, on October 31, 2014, while the forgoing parties were still litigating this action, ownership of the Loan was transferred once again—this time from Doral Recovery II, LLC back to its parent company, Doral Bank (the "Second Loan

---

[6] See Exhibit 4- Motion in Compliance with Order.

Transfer") (ECF No. 3-1).[7]  Even though Doral Bank became the owner of the Loan again, the parties never asked the State Court to substitute Doral Bank back as the Counterclaimant and Third-Party Plaintiff, and, therefore, as of October 2014, Doral Bank owned the Loan and was the Defendant, but Doral Recovery II, LLC was still the named Counterclaimant and Third-Party Plaintiff, even though it no longer owned the Loan.

### E.  Doral Bank's Closure.

On February 27, 2015 (the "Failure Date"), while Doral Bank was the owner of the Loan and the Defendant in this Action, and while the parties were still litigating the Complaint, Counterclaim, and Third-Party Complaint, Doral Bank was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and the FDIC was appointed Doral Bank's receiver.  By operation of federal law, specifically 12 U.S.C. §§ 1821(d)(2)(A) and (B), the FDIC-R succeeded to all of Doral Bank's rights, titles, powers, privileges, assets, and liabilities—including Doral Bank's interest in the Loan.

### D.  The **Third** Transfer of the Loan.

Importantly, as Doral Bank's successor, the FDIC-R quickly entered into several contracts under which it sold many of Doral Bank's assets.  For example, on the same day that Doral Bank was closed, the FDIC-R sold more than 15,000 loans to Banco Popular de Puerto Rico.  Then, approximately one month later, on March 27, 2015, the FDIC-R entered into

---

[7] Although not material to the MOTION TO REMAND or this OPPOSITION, it should be noted that, as set forth in detail in the pending MOTION FOR RECONSIDERATION (ECF No. 3), the State Court did enter upon the request of Vistas and Mac Crohon, a verbal order in open court on November 10, 2014, prohibiting the "defendant" from transferring ownership of the Loan (the "Transfer Injunction"); but, of course, based upon Vistas and Mac Crohon's prior opposition to the First Substitution Motion, Doral Recovery II, LLC at that time was only the Counterclaimant and Third-Party Plaintiff – not the Defendant – and therefore the Transfer Injunction did not apply to it.  More importantly, Doral Recovery II, LLC had <u>already</u> transferred the Loan back to Doral Bank, in any event.  In other words, even to the extent the Transfer Injunction applied to Doral Recovery II, LLC, the Loan was transferred <u>on October 31, 2014</u>, which was before the Transfer Injunction was entered on <u>November 10, 2014</u>.  Accordingly, the transfer was valid and Doral Bank did become the owner of the Loan on October 31, 2014.

another contract and sold more than 10,000 loans – including the Loan that is the subject of this action – to a purchaser named Bautista Cayman Asset Company ("Bautista") (the "Third Loan Transfer") and certain of its affiliates.  Because Bautista purchased the Loan which is the subject of this Litigation (and also contractually assumed from the FDIC-R the liabilities associated with the Loan), the FDIC-R did not have any reason to make an appearance in this action.  Instead, on June 5, 2015, Bautista – as the new owner of the Loan – made an appearance and filed in the State Court a motion seeking to substitute itself directly into the place of Doral Bank as the Defendant (and in the place of Doral Recovery II, LLC as the Counterclaimant and Third-Party Plaintiff).

Unfortunately, as Bautista explains in detail in its pending MOTION FOR RECONSIDERATION (ECF No. 3), Vistas and Mac Crohon once again opposed any effort to substitute a new owner of the Loan.  Specifically, Vistas and Mac Crohon objected to the substitution based on the incorrect assertion that the Second Loan Transfer from Doral Recovery II, LLC to Doral Bank was prohibited by the Transfer Injunction (see footnote 2 above), and thus Doral Bank (now the FDIC-R) could not have subsequently transferred the Loan to Bautista through the Third Loan Transfer.  In other words, Vistas and Mac Crohon asserted that Bautista is not the current owner of the Loan and thus not entitled to substitute into this case.

However, as Bautista has recently explained in detail in its pending MOTION FOR RECONSIDERATION, and explained in simple terms in footnote 2 above, the Second Loan Transfer occurred on October 31, 2014, which was before the Transfer Injunction was issued on November 10, 2014.  Thus, the Second Loan Transfer from Doral Recovery II, LLC to Doral Bank was not prohibited by the Transfer Injunction (even assuming that the Transfer Injunction applied to Doral Recovery II, LLC, which was not the "defendant"), and thus the Third Loan Transfer from Doral Bank (now the FDIC-R) to Bautista was effective.  In other words, Bautista

is the current owner of the Loan and should be substituted into the place of Doral Bank (now the FDIC-R), as well as Doral Recovery II, LLC.

Although the timing of the Second Loan Transfer and Transfer Injunction should now be clear, the State Court, at a hearing held back on August 8, 2016, denied Bautista's substitution request because the State Court did not believe it had sufficient evidence – at that time – to confirm whether the Second Loan Transfer occurred before the Transfer Injunction was issued.[8]  Bautista's MOTION FOR RECONSIDERATION (ECF No. 3) seeks reconsideration of that ruling.  Nevertheless, that motion is still pending and thus, as of August 8, 2008 (and continuing through today), Vistas and Mac Crohon had prevented Bautista from substituting into this action, Vistas remained the Plaintiff seeking damages against Doral Bank as the named Defendant (even though Bautista now owned the Loan), Doral Recovery II, LLC was still the named Counterclaimant and Third-Party Plaintiff (even though Bautista owned the Loan) seeking collection of the Loan against Vistas and Mac Crohon.

### E.  The FDIC-R Recently Substituted Into  This Action in the State Court.

Because Vistas and Mac Crohon forced Doral Bank to remain the named Defendant in this case by opposing Bautista's substitution, the FDIC – as the Receiver for Doral Bank – at that point had no choice but to substitute into Doral Bank's place as the named Defendant in this case and defend the Complaint.

Indeed, last month, on September 1, 2016, approximately 24 days after the State Court denied Bautista's substitution request, the FDIC-R did exactly that.  It made its first appearance in the State Court by filing a Notice of Substitution of Party, which notified the State Court, parties, and attorneys of record that—effective on that date—the FDIC-R substituted into

---

[8] *See* Exhibit 5- Minutes Resolution.

the place of Doral Bank as the Defendant in this case. (ECF No. 1-4) Several hours later, after

substituting into this action, the FDIC-R filed its Notice of Removal in this Court (ECF No. 1).

### F.  The Motion to Remand.

Under 12 U.S.C. § 1819(b)(2)(B), Congress granted specifically to the FDIC the

right to remove to federal court virtually "any" lawsuit to which it is a party.  Nevertheless, on

September 29, 2016, Vistas and Mac Crohon filed their MOTION TO REMAND, asking that this

case be returned to the State Court.  Apparently, they wish to not only prevent the current owner

of the Loan, Bautista, from substituting into this action, they also want to force the FDIC-R to

remain the Defendant but prevent the FDIC, an agency of the United States of America acting in

its capacity as Receiver for Doral Bank, from defending itself in federal court.  They make three

specific arguments in support of their remand request:

- First, they argue that because this lawsuit supposedly involves only "state law matters," and does not involve the interpretation and application of federal law, it falls within the limited removal exception provided in 12 U.S.C. § 1819(b)(2)(D) (commonly referred to as the "State Action Exception") and, therefore, this Court does not have subject matter jurisdiction to hear this case;

- Second, they argue that even to the extent the State Action Exception does not apply, the case should still be remanded because the FDIC-R "waived" its removal right by its "inaction" in the State Court; and

- Finally, they argue that even to the extent the State Action Exception does not apply, this case should still be remanded because the FDIC-R filed its Notice of Removal too late.

First, the very narrow State Action Exception does limit the FDIC's ability to

remove one particular type of case, but it simply does not apply to this case, because this case

involves more than just state law.  The FDIC-R is now defending the Complaint based on,

among other things, four different federal statutory defenses granted exclusively to the FDIC by

Congress.  Those defenses are described and identified further below.

Next, the FDIC-R's "inaction" in the State Court did not result in the FDIC-R "waiving" its removal rights.  The law holds the opposite—a party will only "waive" a removal right if it steps into a state court lawsuit and begins actively litigating a case before removal.  By Vistas and Mac Crohon's own admission, we have the opposite situation here—the FDIC-R took "no action" at all in the State Court until it filed its Notice of Substitution of Party and Notice of Removal on the same day.  There was no waiver.

Finally, by statute, the FDIC-R is granted 90 days to remove a case once it "substitutes" into a case.  The law is clear that the FDIC-R does not "substitute" into a case until it actually files a notice of substitution of party.  Thus, there was nothing untimely about our removal in this case.

In sum, as quickly detailed below, Vistas and Mac Crohon desperately wants to litigate this case in state court, and also wishes, apparently, to keep the FDIC-R as the defendant.  But the FDIC-R is lawfully entitled to defend itself in this federal court, and any remand of this case would be contrary to law.

## II.   APPLICABLE LAW

### A.   Congress Granted to the FDIC the Right to Remove Almost "Any" Case to Which It Is a Party.

As set forth in the FDIC-R's Notice of Removal, Congress granted to the FDIC-R extraordinarily broad authority to remove a case.  Specifically, 12 U.S.C. § 1819(b)(2) reads, in relevant part, as follows:

> (B) Removal
>
> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove **any action, suit, or proceeding** from a State court to the appropriate United States district court **before the end of the 90-day period beginning on the date of the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.**

12 U.S.C. § 1819(b)(2)(B) (emphasis added).   Because Section 1819(b)(2)(B) refers to the FDIC's right to remove "any" action, federal courts have recognized time and again that "Section 1819's chief function in this respect is to permit the FDIC to remove cases to federal court in nearly every case it is a party [and that] Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III." *Lazuka v. FDIC*, 931 F.2d 1530, 1535 (11th Cir. 1991).   Put differently, "Congress ... enacted a broad statutory framework ... and deliberately sought to channel the cases in which the FDIC would have or may wield [its substantive rights and] powers away from the state courts and into federal courts." *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996) (emphasis added) (internal quotations omitted).

Indeed, it is well settled that there are only <u>two</u> limits on the FDIC's power to remove any given case: (i) the "very specific exception, set forth in section 1819(b)(2)(D)" which, as noted above, is often referred to as the State Law Exception; and (ii) timeliness. *Lazuka,* 931 F.2d at 1535.

Here, as discussed in detail below, the State Law Exception does not apply, because the FDIC-R asserts numerous federal statutory defenses to the Complaint that Vistas and Mac Crohon are forcing the FDIC-R to defend.   And, the FDIC-R's removal was timely, because it was filed the <u>same day</u> the FDIC-R was substituted as a party, therefore well within the 90-day deadline included in Section 1819(b)(2)(D).   Finally, there was no waiver, because the FDIC-R took no action in the State Court.

## III.   DISCUSSION

### A)     The State Law Exception Does Not Apply.

The State Law Exception, which is set forth in Section 1819(b)(2)(D), provides that a case will not be deemed to arise under the laws of the United States and therefore the FDIC will not have the right to remove such case, if the following three (3) factors are present:

    (i)    the FDIC "is a party other than as a plaintiff" (e.g., the FDIC is a defendant);

    (ii)    the lawsuit "involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution;" and

    (iii)    **in the case, "only the interpretation of the law of such State is necessary."**

*See* 12 U.S.C. § 1819(b)(2)(D) (emphasis added).

Importantly, Section 1819(b)(2)(D) will not be triggered unless the parties opposing removal, in this case Vistas and Mac Crohon, can prove that <u>all three</u> prongs are satisfied. *See, Castleberry v. Goldome Credit Corporation et al.*, 408 F.3d 773, 786 (11th Cir. 2005)("Under the language of the statute, each of these three prongs must be established by a party to defeat removal."); *Reding v. Federal Deposit Ins. Corp.,* 942 F.2d 1254, 1258 (8th Cir. 1991)("[F]ederal jurisdiction is proper unless the opposing party can prove that the three exceptions in section 1819(b)(2)(D) are applicable."); *Lazuka,* 931 F.2d at 1535 ("If the plaintiff can show that all three conditions of subsection (D) exist ... the plaintiff is then entitled to have the case remanded to state court."). Here, the FDIC-R does not dispute that the first two prongs are satisfied. However, the third one is not.

Well-settled case law – including the seminal case from the First Circuit Court of Appeals – holds that, to the extent it is necessary to apply and interpret federal law, including special defenses granted to the FDIC-R under Title 12, in order to adjudicate a particular case, the State Law Exception does not apply and a case cannot be remanded. *See Capizzi v. Federal*

*Deposit Ins. Corp.,* 937 F.2d 8 (1st Cir. 1991); *see also, Pollock v. Federal Deposit Insurance Corporation*, 17 F.3d 798, 802 (5th Cir. 1994) ("It is well settled that when [the D'Oench defense and 12 U.S.C. § 1823(e)(1) ] are raised, the exception expressed in Section 1819(b)(2)(D) is inapplicable"); *Reding v. Federal Deposit Ins. Corp.*, 942 F.2d 1254, 1258 (8th Cir. 1991) ("When the party opposing the FDIC relies on the "state law" exception of section 1819(b)(2)(D)(iii) and argues that only issues of state law are present, the exception is not met if the FDIC seeks to rely on a defense raising a disputable issue of federal law."); *Diaz v. McAllen State Bank*, 975 F.2d 1145, 1150 (5th Cir. 1992) (holding that, because FDIC raised "colorable" federal defenses, including the exact same ones raised by the FDIC-R below in this case, § 1819(b)(2)(D) did not deprive federal courts of jurisdiction); *Lindley v. FDIC*, 733 F.3d 1043, 1050-1051 (11th Cir. 2013) (same).  The cases reinforcing this point are almost endless.

In the First Circuit case of *Capizzi,* for example, the FDIC-R removed a state court case to federal court and argued that, because it was asserting as defenses both the *D'Oench* doctrine (an FDIC federal common law defense) and 12 U.S.C. § 1823(e) (an FDIC statutory defense), the State Law Exception did not apply.  The district court disagreed, finding that because all of the claims and counterclaims were based on Massachusetts law, remand was appropriate.  However, on appeal, the First Circuit reversed, recognizing that Congress intended to enlarge federal court jurisdiction for the FDIC and used very strong language to provide the FDIC with every possibility of having a federal forum.  More specifically, the First Circuit held that 12 U.S.C. § 1819(b)(2)(D)(iii) requires district "courts to consider the case as a whole— complaint *and likely defenses as well*," to determine whether colorable issues of federal law would be raised. *Capizzi*, 937 F.2d at 10 (emphasis added).  Because the FDIC had raised colorable federal defenses in that case, the First Circuit held that the State Law Exception did not apply and district court's remand was in error.

Similarly, the Fifth Circuit, relying on the First Circuit's decision in *Capizzi*, held

the following:

> Diaz's claims in this litigation are based primarily on oral
> representations, agreements, or courses of dealing, and the FDIC
> argues that the enforceability of unwritten promises against the
> FDIC is governed by the *D'Oench, Duhme* doctrine and § 1823(e),
> both of which generally provide that agreements cannot be
> enforced against the FDIC unless they are in writing.   The
> assertion of these defenses raises colorable issues of federal law.
> *See Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340
> (1987) (§ 1823(e) protects FDIC from unrecorded agreements);
> *Bowen v. FDIC*, 915 F.2d 1013, 1015–16 (5th Cir.1990) (*D'Oench,
> Duhme* bars the use of unrecorded agreements as the basis for
> claims against the FDIC). The FDIC may also have a colorable
> defense to the request for punitive damages in Diaz's complaint.
> *See e.g., Summers v. FDIC*, 592 F.Supp. 1240, 1243 (W.D. Okla.
> 1984) (punitive damages not recoverable against FDIC acting as a
> receiver); *Professional Asset Management, Inc. v. Penn Square
> Bank, N.A.*, 566 F.Supp. 134, 136–37 (W.D. Okla.1983) (same).

*Diaz*, 975 F.2d at 1150.

In this case, *Capizzi*, and all of the other cases cited above, dictate that removal

was entirely proper and remand would be in error, because a critical component of this case now

involves the application and litigation of federal law defenses, including, at a minimum, the

following:

- **12 U.S.C. § 1821(j)** – This statute, which is titled "Limitation on court action"
  and is commonly referred to as the FDIC's "anti-injunction statute," states that
  "no court [state or federal] may take any action, except at the request of the
  Board of Directors by regulation or order, to restrain or affect the exercise of
  powers or functions of the Corporation as a conservator or a receiver." *Id.*

  Based on the statute's plain language, courts have found that § 1821(j) acts as
  a broad prohibition against the entry or continuation of any injunction against
  the FDIC, including one that that either prohibits the FDIC from exercising
  any of its receivership powers and functions or compels the FDIC to perform
  a specific act. *See e.g.*, *Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967
  F.2d 703, 707 (1st Cir. 1992) ("[t]o enable the FDIC to move quickly and
  without undue interruption to preserve and consolidate the assets of the failed
  institution, Congress enacted a broad limit on the power of the courts to

interfere with the FDIC's efforts...."); *Ferreira v. FDIC*, 899 F.Supp. 35, 37-38 (D. Mass. 1995) ("1821(j) bars plaintiff's claim for specific performance").

In fact, courts, including the First Circuit, have unanimously concluded that § 1821(j) specifically prohibits a court from interfering with the FDIC's ability to liquidate assets of a failed bank, such as selling its loans. *See,* e.g., *Ward v. RTC,* 796 F.Supp. 256, 258 (S.D. Tex. 1992)("It is clear from § 1821(j) that the [ ] Receiver is free to perform its functions, which include the liquidation of receivership assets, without being encumbered by the possibility of injunctive actions."); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703, 707 (1st Cir. 1992) ("[t]o enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit [section 1821(j)] on the power of the courts to interfere with the FDIC's efforts").

Here, as discussed in Bautista's Motion for Reconsideration (ECF No. 3) and set forth above, Vistas and Mac Crohon have successfully prevented Bautista from substituting into this case – and forced the FDIC-R to appear and defend the Complaint – based on the assertion that the Transfer Injunction enjoined the FDIC-R from transferring the Loan to Bautista. If Vistas and Mac Crohon's position is accepted, the direct effect will be that the Transfer Injunction necessarily has interfered with the FDIC-R's exercise of its statutory duties and powers to liquate Doral Bank's assets, including selling the Loan to Bautista. Thus, this federal defense is not only colorable, but square and center in this case.

- **12 U.S.C. §§ 1821(d)(9), 1823(e), and the *D'Oench* Doctrine** – These two statutes, and their common law analog, the *D'Oench* doctrine, separately prevent a party from asserting a claim against the FDIC-R that is based upon an unwritten and unrecorded agreement, contract, or promise. *See, Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 673 (1st Cir. 1999)("The doctrine and statute are … directed at protecting the FDIC from unrecorded or oral agreements not in the insured bank's records); *FDIC v. Hamilton*, 939 F.2d 1225, 1231 (5th Cir. 1991)(holding that the § 1823(e) mandate—that promises be "in writing"—only permits enforcement of obligations against the FDIC if they are set out on the face of a written instrument).

Here, Vistas' breach of contract claim, which is the crux of the Complaint the FDIC-R is now defending, is based squarely on the assertion that there was an oral and unwritten agreement between Vistas and Doral Bank's then-president Calixto García, to extend a period to obtain a permit by an additional six months. *See* ECF 1-5, ¶ 15.[9] Vistas goes on to allege that Doral Bank's subsequent alleged acts support the existence of the unwritten agreement and García's verbal consent thereto. *See id.*, ¶¶ 16-21.[10] Vistas then claims that it

---

[9] *See* Exhibit 1, at. page 4.
[10] *Id*. at page 5-6.

suffered damages when Doral Bank breached this alleged unwritten agreement. This is exactly the type of agreement which cannot form the basis of a claim (breach of contract or otherwise) against the FDIC-R, and therefore the Complaint must be dismissed under §§ 1821(d)(9) and 1823(e). Thus, this second group of federal defenses is not only colorable, but square and center in this case.

- **12 U.S.C. § 1821(i)** – This statute, which is titled "Maximum liability," states that, "[n]otwithstanding any other provision of Federal law or the law of any State," § 1821(i) "governs the rights of the creditors (other than insured depositors) of ... an insured depository institution in default or in danger of default." 12 U.S.C. § 1821(i)(1). In other words, § 1821(i) governs Vistas' rights *vis-à-vis* the FDIC-R. The statute goes on to prescribe the maximum extent of FDIC-R's possible liability to Vistas: "The maximum liability of the [FDIC], acting as receiver or in any other capacity, to any person having a claim against the receiver or the insured depository institution for which such receiver is appointed shall equal the amount such claimant would have received if the [FDIC] had liquidated the assets and liabilities of such institution ...." 12 U.S.C. § 1821(i)(2). This language is a codification of the long-standing requirement that the assets of a failed bank shall be ratably distributed among the bank's creditors based on their respective claims, and a corresponding prohibition on a creditor's ability to receive additional compensation for his "trouble and expense" of proving such claim.

  Indeed, for over a century, courts have <u>barred attorneys' fee and cost awards</u> against bank receiverships as impermissible preferences which, if allowed, would contravene ratable distribution requirements by preferring certain creditors over others. *See, e.g., Interfirst Bank-Abilene, N.A. v. FDIC*, 777 F.2d 1092, 1097 (5th Cir. 1985) (award of attorney's fees per state law would "run afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims."); *Fash v. First Nat. Bank*, 89 F.2d 110, 112 (10th Cir. 1937) (fees "would constitute a plain impingement upon the ... ratable distribution of the assets"); *Geiger v. Peyser*, 123 F.2d 167 (D.C. Cir. 1941)(barring fee claim in bank receivership). Under this framework, § 1821(i) plainly bars an award of attorney's fees against the FDIC-R.

  Here, through the Complaint that the FDIC-R is now defending, Vistas seeks an <u>award of attorney's fees and costs</u>.[11] But those claims are now barred under 12 U.S.C. § 1825(b)(3). Thus, this third federal defense is not only colorable, but square and center in this case.

  **12 U.S.C. § 1825(b)(3)** – This statute states that the FDIC-R "shall not be liable for any amounts in the nature of penalties or fines..." *Id*. Section 1825(b)(3) effectively codifies longstanding federal common law barring the

---

[11] *Id*. at page 12.

imposition of punitive or exemplary damages against an agency or instrumentality of the United States. *See Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 33 (5th Cir. 1992)("It is established law that agencies of the United States cannot be held liable for punitive fines or assessments absent express Congressional authorization.")

With that in mind, courts have routinely characterized awards of attorney's fees as a penalty and punitive in nature. *See, e.g., In re Sterten*, 546 F.3d 278, 280 (3rd Cir. 2008) (describing attorneys' fees as part of the penalty under TILA for inaccurate disclosure); *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000)(in the context of the Federal Debt Collection Practices Act, explaining that "attorneys' fees are punitive in the broad sense of the term in that they deprive the defendant of capital and thereby provide a strong incentive not to violate the law")

Here, again, through the Complaint that the FDIC-R is now defending, Vistas seeks an award of attorney's fees.  But that claim is barred under 12 U.S.C. § 1825(b)(3).  Thus, this fourth federal defense is not only colorable, but square and center in this case.[12]

In short, through the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as receiver for failed financial institutions and special powers and defenses to carry out that function.  The FDIC-R is asserting those defenses here.  Because this action now involves the application of federal law, including, but not limited to, the federal defenses set forth above, the third prong of the State Law Exception is not satisfied.  For this reason, the State Action Exception does not apply, removal was proper, and this case cannot be remanded to the State Court.

**B)      The FDIC-R's Notice of Removal Was Not Late.**

As their second argument, Vistas and Mac Crohon assert that the FDIC-R filed its Notice of Removal too late.  Specifically, they agree that under 12 U.S.C. §1819 (b)(2)(B), the FDIC-R is granted 90 days to remove a case from the date on which *the FDIC is substituted as a party* into the case.  Further, they agree the FDIC-R filed its Notice of Substitution of Party in

---

[12] *Id*.

this case on September 1, 2016, and then filed its Notice of Removal on the same day.  However, they assert that the FDIC was "substituted" into this case before it filed its Notice of Substitution of Party.  Specifically, they claim that the FDIC-R was <u>automatically</u> substituted into this case – and the thousands of other pending state and federal lawsuits in which Doral Bank was a party – on the date the FDIC-R was appointed as Doral Bank's receiver on February 27, 2015.  Vistas and Mac Crohon assert that the FDIC-R was thus required to remove this case within 90 days of that date.  But, once again, current law says the opposite.

Vistas and Mac Crohon rest their entire argument on the shoulders of the First Circuit case of *Woburn Five Cents Sav. Bank v. Robert M. Hicks*, Inc., 930 F2d 965 (1st Cir 1991).  In fact, they utilize three pages of their MOTION TO REMAND for a block quote from that single case.  However, as Vistas and Mac Crohon themselves acknowledge in their MOTION TO REMAND (ECF No. 7 at page 12), *Woburn* was decided <u>before</u> 12 U.S.C. §1819(b)(2)(B) was <u>amended</u>.  Importantly, before the amendment, the time period did begin to run upon the appointment of the FDIC as receiver, but after the amendment, the 90-day period does not begin to run until the FDIC-R actually <u>files a notice of substitution</u> in court.  Indeed, federal courts of appeal are now unanimous in reaching this conclusion.

For example, in *Buczkowski v. FDIC*, 415 F. 3d 594, 596 (7th Cir. 2005), the Seventh Circuit actually discussed the decisions that had been reached by other circuit courts <u>before</u> the amendment of 12 U.S.C. §1819(b)(2)(B) and specifically explained that the cases which state that the clock starts to run immediately upon the appointment of the FDIC as receiver are now invalid and have been superseded by the amended statute:

> The district judge thought that he had to choose between conflicting lines of precedent: some courts of appeals hold that the FDIC's clock starts immediately on its appointment, while others hold that the time does not start until formal substitution as a party in court. *Compare Woburn Five Cents Savings Bank v. Hicks*, 930

16

F.2d 965, 968-71 (1st Cir.1991) (FDIC becomes a party and may remove on its appointment as a receiver), and *Lazuka v. FDIC*, 931 F.2d 1530, 1537 (11th Cir.1991) (same), with *FDIC v. Loyd*, 955 F.2d 316, 327 (5th Cir.1992) (FDIC may wait until formal substitution), and *Diaz v. McAllen State Bank*, 975 F.2d 1145, 1147-48 (5th Cir.1992) (same). The judge favored the former rule because it prevents the FDIC from lurking in the background and removing only if things appear to be going badly in state court. Removal should come as soon as practicable, the judge believed, and no litigant should have an option to consider rulings on the merits before deciding which judicial system will handle the litigation. That is indeed the normal rule, reflected in § 1446(b), but given § 1819(b)(2)(B) the FDIC need not play by the normal rules.

There is no need to choose sides in a conflict, because there is no conflict—not, at least, at the appellate level. *Woburn* and *Lazuka* were decided in 1991, before the amendment that gave § 1819(b) its current text. They considered the FDIC's removal rights and obligations under § 1446, a statute of general application. *Loyd* and *Diaz*, by contrast, were decided in 1992 and apply § 1819(b)(2)(B). **No appellate court has held that the amended version of § 1819(b)(2)(B) starts the clock with the FDIC's appointment as a receiver**. The eleventh circuit has held that the amended § 1819(b)(2)(B) abrogates *Lazuka* by giving the FDIC 90 days after formal substitution to remove the case. *See FDIC v. S & I 85-1, Ltd.*, 22 F.3d 1070, 1073-74 (11th Cir.1994).

*Id*. at 595-596 (emphasis added).

Importantly, in describing the current state of the law, the Seventh Circuit specifically noted that the First Circuit itself also now recognizes that, contrary to *Woburn*, the 90-day period begins to run when the FDIC files a notice of substitution, not upon its appointment as receiver:

The first circuit has not explicitly overruled *Woburn*, but *FDIC v. Keating*, 12 F.3d 314 (1st Cir.1993), applies the amended § 1819(b)(2)(B) **to allow a removal long after the FDIC's appointment as a receiver**; likely the first circuit thought *Woburn* irrelevant, because it dealt with a statute that no longer supplies the governing rule.

*Buczkowski,* at 596 (emphasis added).   To be clear, the First Circuit has indeed acknowledged

through *Keating* at 315, that the 90-day removal period starts to run when the FDIC-R files its

notice of substitution in the state court, not when the FDIC is appointed as receiver.   If the

contrary was true, the removal in *Keating* would have been untimely because it occurred 136

days after the FDIC's appointment as receiver.

      With that in mind, it is instructive to note that in reaching their conclusions that

the 90-day period begins to run when the FDIC files its notice of substitution, the Seventh

Circuit – and other circuit courts referenced above and below – have relied on the plain language

of the FDIC's current removal statute:

> Section 1819(b)(2)(B) starts the clock when 'the Corporation is
> substituted as a party.'   Substitution 'as a party' must mean 'as a
> party to the litigation.'   **Reading this language to mean
> 'substituted as the failed bank's receiver' would turn the word
> 'party' into mush.**   The FDIC may be a bank's receiver or insurer
> or regulator (its three statutory capacities) but is not a 'party' to
> anything in particular in any of these capacities.   It becomes a
> 'party' only in court.   'Substituted as a party' and 'appointed as
> receiver' are too different to equate.   Federal practice requires
> notice and motion for all substitutions other than the identity of an
> officeholder in official-capacity suits [...] Section 1819(b)(2)(B)
> should be understood against that background, so that substitution
> as a party requires a specific filing in court.

*Buczkowski*, at 596; see also, *Allen v. FDIC*, 710 F. 3d 978, 981 (9th Cir. 2013) ("the filing of a

notice of substitution, which makes the FDIC a party to the action, immediately triggers the right

to remove under subpart (2)(B)…"); *Diaz v. McAllen State Bank*, 975 F.2d 1145 (5th Cir. 1992)

(holding that the FDIC could remove that case 2 ½ years after it was appointed as receiver, and

noting that although this would seem to give the FDIC an unfair advantage over opposing

litigants, "Congress has clearly provided this right to the FDIC"); *Dalton v. FDIC*, 987 F.2d

1216, 1221 (5th Cir. 1993) (holding that the time for removal begins to run "from the date the

FDIC 'is substituted as a party,'" not when it is appointed as receiver"); *F.D.I.C. v. N. Savannah*

*Properties, LLC*, 686 F.3d 1254, 1259 (11th Cir. 2012) (restating the 11th Circuit's holding that "substituted as party" does not mean "the date the FDIC is appointed receiver"); *FDIC v. S &I 85-1, Ltd.*, 22 F. 3d 1070, 1073-74 (11th Cir. 1994) (holding that its prior decision in *Lazuka* with respect to the date on which the clock begins to run was superseded by the amended statute); *Casey v. FDIC*, 583 F.3d 586, 591 (8th Cir. 2009) (indicating that §1819(b)(2)(B) allows the FDIC to remove any case from state to federal court within 90 days of its becoming a party); *see also*, *Estate of Harding by Williams v. Bell,* 817 F.Supp. 1186 (D. N.J. 1993) ("[Diaz] appears to be a sound rule built on common sense and a straightforward reading of the amended statute.").

The FDIC-R timely removed this case under 12 U.S.C. § 1819(b)(2), because it filed the Notice of Removal on the same date it made its first appearance and filed its Notice of Substitution of Party in the State Court.  Therefore, the removal was timely and this case cannot be remanded to the State Court.

**C)**     **The FDIC-R Did Not "Waive" Its Removal Right.**

Finally, as their third argument, Vistas and Mac Crohon assert that even if the FDIC-R's Notice of Removal was timely, this case should still be remanded because the FDIC-R supposedly "waived" its removal right because: (i) a local law firm (Salichs Pou & Associates PSC), which represented Doral Bank in the State Court before Doral Bank failed, filed a motion on December 18, 2015, stating that it no longer represented Doral Bank and that the FDIC-R should be the proper party; (ii) the State Court scheduled a Status Conference for August 8, 2016, and sent notice of the same to the FDIC-R, but *the FDIC-R failed to respond to the notice or attend the hearing*; and (iii) Plaintiff supposedly notified the FDIC-R of its intention to continue the case in state court, but *the FDIC-R failed to take any action*.  In sum, Vistas and Mac Crohon claim that the FDIC-R waived its removal right based on actions of someone else (a

local law firm) or the *inaction* of the FDIC-R.  Once again, however, the law says exactly the opposite.

The FDIC-R does not dispute that based on its conduct, a party can implicitly waive its removal rights. *See, e.g., Montanez v. Solstar Corp.*, 46 F. Supp. 2d 101, 105 (D. P.R. 1999) (holding that "a state court defendant, however, 'may lose or waive the right to remove to federal court by taking some substantial offensive or defensive action in the state court action indicat[ing] a willingness to litigate in that tribunal before filing a notice of removal with the federal court.'") (*quoting* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3721, p. 363 (3d ed.1998)).  But just as Wright & Miller expressly states, and *Montanez* reiterates, any such waiver must be based on the party "taking some substantial offensive or defensive action in the state court action indicat[ing] a willingness to litigate in that tribunal before filing a notice of removal with the federal court."  Indeed, circuit courts agree that in order for a defendant, including the FDIC specifically, to waive its rights to remove a case it must act in a manner in which it "clearly and unequivocally" manifests its intention to litigate in state court and waive its removal rights. *See, e.g., Beighley v. F.D.I.C.*, 868 F.2d 776 (5th Cir. 1989).

In *Beighley*, the Fifth Circuit found that the FDIC did <u>not</u> waive its right to remove the case, *even though it appeared in state court and filed various motions before removing the case to federal court. See also, Cogwell v. Wyeth*, 366 F. 3d 1245, 1249 (11th Cir. 2004) (same).  The Fifth Circuit determined that "[a] waiver of the right of removal must be clear and unequivocal."  It cited Moore's Federal Practice (1987) and indicated that, in general, "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits."  It held that the "FDIC cannot be said to have waived its statutory right to removal simply by taking preliminary steps in state court to set aside a default judgment." *Beighley,* at

782.  In fact, all of the cases cited by Vistas and Mac Crohon in their MOTION TO REMAND are no different.  They actually support the FDIC-R's position and are consistent with well-settled law that in order for a party to waive its right to remove a case, it must make "clear and unequivocal actions" and take "substantial offensive or defensive actions" in state court:

- In *Mancari v. AC & S Co.*, 683 F. Supp. 91, 94 (D. Del. 1988), the District Court stated that "[i]n almost all of the cases where waiver has been found, the courts have concluded that the defendant manifested an intention to remain in state court by either asserting its rights in the court or by some other affirmative action taken in the state forum." (emphasis added).  In *Mancari*, the defendant with the right to remove the case participated in the state court trial for two days before removing the case.  Thus, under the "clear and unequivocal" standard, the district court found that the defendant manifested an intention to remain in state court by continuing to present evidence in the trial even after it was aware of its right to remove.

- In *Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 337 (D.S.C. 1979), the court found that if a petitioner "makes [a] timely application for removal and properly objects to its denial by the state court, participation in subsequent proceedings in state court is not a waiver of his claim that the cause should have been litigated in the federal court."

- In *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428–29 (5th Cir. 2003), the Fifth Circuit held that the defendant did not waive its right to remove by filing a motion to transfer venue, a motion for entry of confidentiality order and a motion to consolidate because he did not seek adjudication on the merits of the case.

- In *Waldron v. Skelly Oil Co.*, 101 F. Supp. 425, 426 (E.D. Mo. 1951), the District Court found that if a case becomes removable during the trial in state court, the right to remove may be waived by proceeding with the trial without raising an objection.[13]

---

[13] In the only other case cited by Vistas and Mac Crohon, *Walker v. Am. Tel. & Tel. Co.*, 684 F. Supp. 475, 478 (S.D. Tex. 1988), the District Court held that removal statutes are to be strictly construed and as such, as soon as a case becomes removable, the statutes require immediate notification of the intent to remove.  Obviously, as explained in detail above, this case did not become removable until the FDIC-R actually filed a notice of substitution, and its Notice of Removal was filed the same day.  This case does absolutely nothing to support Vistas and Mac Crohon's waiver argument.

Here, by Vistas and Mac Crohon's own admission, the FDIC-R took no action at all in the State Court before filing its Notice of Substitution of Party and Notice of Removal.  Under applicable law, the FDIC-R's inaction is precisely what establishes that it did not seek to adjudicate this case on the merits before filing its Notice of Removal.  Therefore, the FDIC-R did not waive its removal rights, its removal was proper and timely, and this case cannot be remanded to the State Court.[14]

## III.    CONCLUSION

First, the very narrow State Action Exception simply does not apply to this case, because this case involves more than just state law.  Second, the FDIC-R's "inaction" in the State Court did not result in the FDIC-R "waiving" its removal rights, because the law requires the opposite—action.  Finally, the FDIC-R's removal was timely, because it did not "substitute" into this case until it actually filed its Notice of Substitution of Party, and then filed its Notice of Removal within 90 days thereafter.  In sum, the FDIC-R's removal was proper, timely, and its right to remove was never waived.

For the foregoing reasons, the FDIC-R respectfully requests that this Court deny in its entirety the MOTION TO REMAND filed Vistas and Mac Crohon.

RESPECTFULLY SUBMITTED.

---

[14] In their MOTION TO REMAND, Vistas and Mac Crohon also argue that the FDIC-R "waived" its removal right based on language that was contained in the notice of disallowance of claim  issued by the FDIC-R. Specifically, they argue that in the notice of disallowance, the FDIC-R informed them that they could continue their existing suit in state court.  But Vistas and Mac Crohon are confusing, or at least conflating, two different issues.  The FDIC-R does not dispute that, once a party timely complies with the FDIC's administrative claims process, the party may then continue a federal or state court lawsuit that had been filed against a bank prior to its failure.  Indeed, in this situation, Vistas and Mac Crohon timely completed the administrative claims process and were entitled to proceed with their state court suit.  In other words, they were not required to file a new lawsuit and start from the beginning.  However, once the FDIC-R substituted into that same existing suit, it was entitled to remove it under 12 U.S.C. § 1819(b)(2). Vistas and Mac Crohon's argument in this regard fails.

**I HEREBY CERTIFY:** that on this date I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the case of caption and that on this same date a true copy of FDIC's OPPOSITION was sent by regular mail to Doral Recovery II, LLC, Susan M. Lovelace, Esq., Federal Deposit Insurance Corp. 1601 Bryan Street, 15th Floor, Dallas, Texas 75201.

In San Juan, Puerto Rico, October 20, 2016.

s/ Jairo Mellado-Villarreal
USDC No.208112
jmellado@mellado.com

s/ Tessie Leal Garabis
USDC No. 218408
tleal@mellado.com

Attorneys for FDIC-R
MELLADO & MELLADO-VILLARREAL
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico  00917-1235
Tel. 787-767-2600/Fax 787-767-2645

FEDERAL DEPOSIT INSURANCE
CORPORATION
1601 Bryan St., 15th Floor
Dallas, TX  75201
Tel.: (972) 761-2465
Fax: (972) 761-8181
E-mail: jsandell@fdic.gov

/s/ JEFFREY A. SANDELL
Jeffrey A. Sandell
Arizona Bar No. 020658