## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

VISTAS DE CANOVANAS I, INC.,

       **Plaintiff**,

          **v.**

FEDERAL DESPOSIT INSURANCE
CORPORATION, as Receiver of
Doral Bank

       **Defendant.**

**Civil No.** 16-2568 (FAB)

## OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is Bautista Cayman Asset Company ("Bautista")'s unopposed motion to alter or amend the August 8, 2016, Puerto Rico Court of First Instance "Minutes Resolution" pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") and Vistas de Canovanas I, Inc. ("Vistas")'s motion to remand pursuant to 12 U.S.C. § 1819. (Docket Nos. 7 at p. 2; 3 at p. 1.) For the reasons set forth below, the Court **DENIES** Bautista's motion to alter or amend the judgment, and **DENIES** Vistas' motion to remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2009 Vistas filed a complaint against Doral Bank ("Doral Bank") in the Court of First Instance, San Juan Superior Division

---

[1] Ian Joyce, a second-year student at Vanderbilt University Law School, assisted in the preparation of this Opinion and Order.

("state court"),[2] seeking damages related to an alleged breach of contract regarding a loan Vistas obtained from Doral Bank to construct a housing project in Canovanas, Puerto Rico ("loan"). (Docket Nos. 1 at p. 1; 3 at p. 2.)   Doral Bank asserted a counterclaim against Vistas seeking collection of the loan and a third party complaint against Ramon MacCrohon ("MacCrohon"), the guarantor of the loan.  (Docket No. 1 at p. 1.)

During proceedings in state court, Doral Bank transferred the loan to a subsidiary, Doral Recovery II, LLC ("Doral Recovery"). (Docket Nos. 1 at pp. 1-2; 3 at p. 2.)   Doral Recovery was subsequently joined to the state court action as a counterclaimant (for repayment of the loan) and as a third party plaintiff (in the action against MacCrohon).  (Docket No. 1 at p. 2.)

In September 2014, Vistas requested the state court to prohibit transfer of the loan.   (Docket No. 3 at p. 3.) Notwithstanding this motion, Doral Recovery transferred the loan back to Doral Bank on October 31, 2014.  (Docket Nos. 1 at p. 2; 3 at p. 4; 3-1 at p. 3.)   The state court issued an order in November 2014, prohibiting Doral Recovery from selling the loan. (Docket No. 3 at pp. 4-5.)

---

[2] The Commonwealth of Puerto Rico is considered a "state" in removal actions. Kane v. Republica De Cuba, 211 F. Supp. 855, 856 (D.P.R. 1962) (Ruiz-Nazario, J.).

The Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral Bank on February 27, 2015. (Docket No. 3 at p. 5.) The Federal Deposit Insurance Corporation ("FDIC") became Doral Bank's receiver. (Docket No. 1 at p. 2.)

The FDIC published a notice in El Nuevo Dia newspaper requiring Doral's creditors to submit their claims to the FDIC. (Docket No. 7 at p. 8.) Vistas did so, after which the FDIC disallowed its claim ("disallowance letter"). (Docket No. 7 at p. 9.) In the disallowance letter, the FDIC informed Vistas that "[p]ursuant to 12 U.S.C. § 1821(d)(6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver)." Id.

The FDIC, as Doral Bank's receiver, promptly sold the loan to Bautista. (Docket Nos. 3 at p. 6; 7 at p. 10.) Bautista then moved to substitute itself for Doral Bank in the state court action as owner of the contested loan. (Docket No. 3 at p. 6.) Vistas opposed, arguing that the transfer of the loan from Doral Recovery to Doral Bank violated the state court's November order, rendering the transfer from the FDIC to Bautista void. Id.

Bautista requested documentation from the FDIC to confirm its ownership of the loan.  <u>Id.</u>  Bautista received a number of documents from the FDIC, and submitted these documents to the state court during an August 8, 2016 hearing.  (Docket No. 3 at p. 7.) The state court noted that the promissory note at issue lacked endorsement from Doral Bank to Doral Recovery, casting doubt on the validity of the transfer.  (Docket No. 10-5 at p. 3.)  In the same decision, the state court disqualified the attorneys for Doral Bank and Doral Recovery, and subsequently, because the FDIC had not yet appeared in the litigation, denied the motion to substitute ("August Order").[3]  <u>Id.</u>  The state court continued trial for March 2017.  (Docket Nos. 3 at p. 8; 10-5 at p. 3.)

Bautista requested more information from the FDIC, and on September 1, 2016 the FDIC provided Bautista with a sworn affidavit from Edward M. Mertic, declaring that the loan had, indeed, been transferred to Doral Bank before the state court prohibited transfer (the "affidavit").[4]  (Docket Nos. 3 at p. 8; 3-1 at p. 3.)

---

[3] "Given that defendant does not have counsel at this time, and the FDIC has not appeared in this case, which told the plaintiff to continue with the claim, the substitution of party requested by Bautista Cayman Assets Company is denied."  (Docket No. 10-5 at p. 3.)

[4] In its motion for reconsideration, Bautista claims that the affidavit consists of a declaration by "Alex R. Greenberg."  (Docket No. 3 at p. 8.)  The affidavit exhibit indicates it is, in fact, a deposition of "Edward M. Mertic." (Docket No. 3-1 at p. 1.)  At this juncture, this difference is immaterial.

That same day, September 1, 2016, the FDIC filed a notice of substitution of party in the state court to take the place of Doral Bank in the litigation and then removed the case to federal court. (Docket Nos. 1 at pp. 1 and 2.) Vistas timely filed a motion to remand. (Docket No. 7.) The FDIC filed an opposition. (Docket No. 10.) Vistas' motion for leave to file a reply was denied as untimely. (Docket No. 20.)

Additionally, on September 1, Bautista timely filed a motion requesting that this Court reconsider the August Order. (Docket No. 3.) Vistas did not file an opposition.

## II.  DISCUSSION

### A.    Motion to Reconsider[5]

#### 1.    Initial Adoption of State Court Ruling

Upon removal, the federal court essentially "takes the case up where the State court left it off."  Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70  of Alameda Cty., 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974) (citations omitted).  To that end, district courts adopt "all injunctions, orders, and other proceedings"

---

[5] Bautista requests the Court to substitute Bautista for the FDIC in the litigation.  (Docket No. 3 at p. 11.)  This action was removed to the Court by the FDIC pursuant to its inherent power to do so as set forth in 12 U.S.C. section 1819(b)(2)(B). (Docket No. 1 at 1.)  If Bautista is substituted for the FDIC, the Court may lack subject matter jurisdiction to hear this case.  See Scotiabank of Puerto Rico v. Sanchez-Castro, Civil No. 16-1026, 2017 WL 56893, at *2 n. 1 (D.P.R. 2017) (Besosa, J.) ("As Sanchez himself acknowledges, the mortgage notes originally held by Doral have since been assigned to other entities [...] This transfer — and the resulting substitution of the failed bank as a plaintiff — effectively removed the FDIC as receiver from the consolidated actions.  Section 1819 therefore, no longer bestows upon the federal courts original jurisdiction over those cases.").  Accordingly, the Court first addresses Bautista's Rule 59(e) motion.  See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case.")

present in the state court action at the time of removal.[6]  28
U.S.C. § 1450.

>    **2.  Analysis**

>        Bautista argues that the state court denied its
motion to substitute because Bautista's lawyers failed to
demonstrate that Doral Recovery transferred the loan to Doral Bank
before the November order.  (Docket No. 3 at p. 8.)  Bautista avers
that because the FDIC affidavit clarified that certain transfers
were not endorsed, the Court should amend the August Order and
grant Bautista's motion to substitute.   (Docket No. 3 at p. 8.)
The motion for reconsideration is unopposed by Vistas.

>        Rule 59(e) is "an extraordinary remedy which should
be used sparingly."   Palmer v. Champion Mortg., 465 F.3d 24, 30
(1st Cir. 2006) (citations omitted).  Motions to amend judgment
are only appropriate "if they seek to correct manifest errors of
law, present newly discovered evidence, or when there exists an

---

[6] There is some debate as to how a district court, upon removal of a state
action, should evaluate motions to reconsider judgments rendered in state court.
See Breedlove v. Cabou, 296 F. Supp. 2d 253, 263-65 (N.D.N.Y. 2003) (describing
the approaches taken by the Third, Fifth, Ninth, and Eleventh Circuit Courts of
Appeals).  While the First Circuit Court of Appeals has not directly addressed
the issue before the Court — a motion to reconsider a state court denial of a
motion made by a third party — it has suggested in *dicta* that a district court
has authority to consider timely motions for post-judgment relief of state court
decisions after the action has been removed to federal court.   F.D.I.C. v.
Keating, 12 F.3d 314, 317 at n.4. (1st Cir. 1993). Accordingly, the Court may
decide Bautista's motion.

intervening change in law." <u>Citizens of Karst, Inc. v. United</u>
<u>States Army Corps of Engineers</u>, Civil No. 14-1592, 2017 WL 773597,
at *1 (D.P.R Feb. 28, 2017) (Besosa, J.) (citing <u>Rivera-Surillo &</u>
<u>Co. v. Falconer Glass Indus., Inc.</u>, 37 F.3d 25, 29 (1st Cir.
1994)).  Rule 59(e) is not "a vehicle for a party to undo its own
procedural failures, and it certainly does not allow a party to
introduce new evidence or advance arguments that could and should
have been presented to the district court prior to the judgment."
<u>Aybar v. Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997) (citations
omitted).

The Court first notes that even if Bautista
prevailed on the motion to reconsider, the Court would only clarify
that the state court "denial" of the motion to substitute was a
"denial without prejudice."  Granted, Bautista is correct in that
the state court mentions a lack of evidence in the August Order;[7]
however, the state court reserved judgment on the merits of
Bautista's substitution motion.  <u>See</u> Docket No. 10-5.  Indeed, the
August Order contains no legal discussion or analysis of Puerto
Rico law governing substitution of parties, much less an analysis

---

[7]  "Today, the Court's attention is brought to the matter of two (2) Promissory
Notes, that are part of the chose in action of this case, which upon being
examined by the FDIC, one of said Promissory Notes appears on Doral Bank books,
**and none of the attorneys can clarify what happened**, for which **Bautista Cayman**
**Asset Company** is not authorized to appear as a party in this case." (Docket
No. 10-5 at p. 3.) (emphasis added).

of Bautista's motion.  <u>See</u> <u>id.</u>  The most the Court can decipher

from the August Order is that the state court denied the

substitution motion because Doral's lawyers had been disqualified

and the FDIC had not yet appeared — leaving plaintiff Vistas and

third party Bautista as the only parties with counsel present at

the hearing.  (Docket No. 10-5 at p. 3.)  ("Given that defendant

[Doral] does not have counsel at this time, and the FDIC has not

appeared in this case [. . .] the substitution of party requested

by Bautista Cayman Assets Company is denied.")  Because removal to

federal court occurred before the Court of First Instance addressed

the merits of the substitution motion, there is no analysis from

the state court upon which the Court may "alter or amend."[8]

       Bautista may not avoid an adjudication on the

merits of its substitution motion by invoking Rule 59(e).[9]  The

_____

[8] In its motion to reconsider, Bautista requests that the Court grant the motion
to substitute, but submits no precedent or legal argument as to why it should
be substituted.  <u>See</u> <u>Docket No. 7.</u>

[9] The Court also notes that Rule 59(e) "appl[ies] only to final judgments", that
is, "order[s] from which an appeal lies."  <u>Portugues-Santa v. B. Fernandez</u>
<u>Hermanos, Inc.</u>, 614 F. Supp. 2d 221, 226 (D.P.R. 2009) (Besosa, J.) (quoting
Fed. R. Civ. P. 54(a)); <u>Municipality of San Sebastian v. Puerto Rico</u>, 116 F.
Supp. 3d 49, 53 (D.P.R. 2015) (Besosa, J.).  The Court is not entirely convinced
the August Order constitutes a final judgment, but declines to evaluate the
issue because Bautista's motion is unopposed and there are alternative grounds
for denial.  <u>See</u> <u>Laguer v. United States</u>, Civil No. 16-2852, 2017 WL 2691191,
at *3 at n.8. (D.P.R. June 22, 2017) (Besosa, J.) (declining to evaluate multiple
arguments when one was sufficient for dismissal); <u>Cf.</u> <u>Grasso v. Dudek</u>, Case No:
6:13-cv-1536-Orl-28GJK, 2014 WL 12622475, slip op. at *1 at n.1 (M.D.Fla.
Feb. 14, 2014) (declining to evaluate an unclear area of law when the moving
party had not raised the issue.)

proper pleading to litigate this issue is a motion for substitution, not a motion for reconsideration.  See e.g., Fed. R. Civ. P. 25(c).

        With regard to the Rule 59(e) motion, aside from stating in a conclusory manner that "the newly discovered evidence [was] not previously available," Bautista offers no substantive reason why it could not have presented the FDIC affidavit to the state court.[10]  Bautista received evidence from the FDIC before the state court hearing.  (Docket No. 3 at pp. 6-7.)  Bautista could have requested the affidavit regarding possession of the loan at that time.  This deficiency alone merits denial of the Rule 59(e) motion.  See Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 29-30 (1st Cir. 1980) ("A defeated litigant cannot set aside a judgment [. . .] because he failed to present on a motion for summary judgment all of the facts known to him that might be useful to the court."); Shell Co., Ltd. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 201 (D.P.R. 2008) (Besosa, J.) (denying a motion to alter judgment when defendant's new evidence was not

---

[10] Bautista also failed to provide the Court with any of the pertinent state court decisions used to supplement its case.  See Docket No. 3 at p. 5 ("As it was drafted, it appears that neither the November 10, 2014 nor the April 20, 2015 Order/Resolution applied to Doral bank.").  Indeed, the August Order was supplied by the FDIC, not Bautista, in its own motion to oppose remand.  (Docket No. 10-5.)

material and "LFSS had ample opportunity to present Mr. Rosa's evidence earlier.")

Accordingly, the Court **DENIES with prejudice** Bautista's motion to alter or amend the state court judgment.

**B.   Motion to Remand**

Vistas moves to remand this action on three grounds: (1) the removal was barred by 12 U.S.C. section 1819(b)(2)(D), (2) the FDIC waived its right to removal, and (3) the notice of removal was untimely.   (Docket No. 7 at pp. 1-2.)   The FDIC opposed. (Docket No. 10.)

**1.   Legal Standard**

28 U.S.C. section 1441 governs the removal of an action to federal court and provides in pertinent part, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441.  Removal, then, is contingent on whether the case originally could have been brought in this federal court. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); Scotiabank of Puerto Rico v. Sanchez-Castro, Civil No. 16-1026,

2017 WL 56893, at *1 (D.P.R. 2017) (Besosa, J.). When the FDIC is involved as a party, original jurisdiction is premised on federal question jurisdiction pursuant to 12 U.S.C. section 1819(b)(2)(A). See 12 U.S.C. § 1819(b)(2)(A); Scotiabank of Puerto Rico, 2017 WL 56893 at *1.

### 2. Analysis

#### a. 12 U.S.C. § 1819(b)(2)(D)

When the FDIC is appointed receiver of a bank, it has wide authority to remove cases to federal court. See 12 U.S.C. § 1819(b)(2)(B). Vistas, however, argues that remand is appropriate pursuant to the "state law exception" to the FDIC's removal authority because the complaint is premised entirely on Puerto Rico law. 12 U.S.C. § 1819(b)(2)(D); (Docket No. 7 at p. 7.) The FDIC counters that forthcoming federal law defenses predicated on 12 U.S.C. § 1821(i),(j) and the D'Oench doctrine[11] renders the state law exception inapplicable. (Docket No. 10 at p. 15.)

---

[11] The D'Oench doctrine is a federal common law form of estoppel that "prohibits bank borrowers and others from relying upon secret pacts or unrecorded side agreements to diminish the FDIC's interest in an asset [. . .]" Vasapolli v. Rostoff, 39 F.3d 27, 33 (1st Cir. 1994); see D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The D'Oench doctrine has been codified in 12 U.S.C. sections 1823(e) and 1821(d)(9)(A), and the FDIC plans on raising a defense premised on those statutes as well. (Docket No. 10 at pp. 13-14.); Bolduc v. Beal Bank, SSB, 167 F.3d 667, 673 (1st Cir. 1999).

The state law exception in 12 U.S.C. section 1819(b)(2)(D) ("section 1819") sets forth a three pronged test:

> (i)    To which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff
>
> (ii)   Which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
>
> (iii)  In which only the interpretation of the law of such State is necessary.

No litigant disputes that the first two prongs are satisfied. (Docket Nos. 7 at p. 3; 10 at p. 10.) The First Circuit Court of Appeals examined the third prong in Capizzi v. Fed. Deposit Ins. Corp. The Capizzi court emphatically ruled that the third prong is negated when the FDIC plans to assert federal defenses, specifically the D'Oench defense. See Capizzi v. Fed. Ins. Corp., 937 F.2d 8, 10 (1st Cir. 1991) ("In our view, however, the language here at issue does *not* instruct the court to look only to the complaint. Rather, it intends the courts to consider the case as a whole — complaint and **likely defenses** as well.") (emphasis added). Because the FDIC will purportedly raise several federal defenses, the state law exception is inapposite. (Docket No. 10 at pp. 12-15); see Capizzi, 937 F.2d 8, 10-11; Roman-Lanzo

v. Guzman, Civil No. 15-2309, slip op. at 1 (D.P.R June 23, 2016)
(Delgado-Hernandez, J.)

### b.   Waiver

Vistas argues that the FDIC waived removal by
providing Vistas with the disallowance letter. (Docket No. 7 at
p. 8); see supra p. 2. Vistas further argues that the FDIC
manifested an intent to waive removal by neglecting to litigate in
state court.[12] (Docket No. 1 at p. 11.)  The FDIC counters that
by not litigating in the state court, the FDIC manifested a desire
to exercise its right to removal.  (Docket No. 10 at p. 20.)
Moreover, the FDIC contends that the disallowance letter merely
informed Vistas that it was free to continue its action in state
court.  (Docket No. 10 at p. 22.)

A party may waive removal to federal court by
litigating in the state court in such a manner that "invoke[s] the
jurisdiction of the state court" or engages in actions that
"manifest the defendant's intent to have the case adjudicated in

---

[12] Vistas also vaguely references an "estoppel" argument. (Docket No. 7 at
p. 11.)  Even if the doctrine of estoppel pertains to this case, the Court will
not consider it — Vistas merely mentions the term "estoppel" in passing, setting
forth no legal argument as to why estoppel bars removal.  (Docket No. 7 at p.
11) ("[The FDIC's inaction] is a waiver of its right of removal in and of itself
or estoppel and is also consistent with its original waiver [. . .]"); see U.S.
v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a
perfunctory manner, unaccompanied by some effort at developed argumentation,
are deemed waived.").

state court." <u>Hernandez-Lopez v. Com. Of Puerto Rico</u>, 30 F. Supp. 2d 205, 209 (D.P.R. 1998) (Perez-Giminez, J.). A waiver of removal may take multiple forms. <u>Montanez v. Solstar Corp.</u>, 46 F. Supp. 2d 101, 105 (D.P.R. 1999) (Dominguez, J.). A waiver, however, must be "clear and unequivocal" and the parties' actions must be inconsistent with the right to remove. <u>Hernandez-Lopez</u>, 30 F. Supp. 2d at 209. The following actions have failed to waive removal: filing a motion for extension of time, <u>Malave v. Sun Life Assur. Co. of Canada</u>, 392 F. Supp. 51, 52 (D.P.R 1975) (Pesquera, J.), answering a complaint, <u>Montanez</u>, 46 F. Supp. 2d at 105, and submitting an answer, motion, memorandum, an order to show cause, and an interrogatory, <u>Hernandez-Lopez</u>, 30 F. Supp. 2d at 209.

Here, the FDIC sent an administrative letter and refrained from litigating in the state court proceeding until filing the motion to remove. Declining to appear in state court does not constitute a waiver of removal. Furthermore, as noted by the FDIC, precedent cited by Vistas supports the FDIC's argument and undermines Vistas' assertions. <u>See, e.g.</u>, <u>Tedford v. Warner-Lambert Co.</u>, 327 F.3d 423, 428-29 (5th Cir. 2003) ("[T]he right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits."); <u>Mancari v. AC</u>

& S Co., 683 F. Supp. 91, 94 (D. Del. 1988) ("In almost all of the
cases where waiver has been found, the courts have concluded that
the defendant manifested an intention to remain in state court by
either asserting its rights in the court or by some other
affirmative action [. . .]").  The Court is satisfied that the
FDIC maintained its right to removal.

　　　　c.  **Timeliness**

　　　　　　　　Vistas' final argument challenges removal
because, according to Vistas, the FDIC's motion was untimely.
Specifically, Vistas argues that the 90-day limitations period to
file for removal pursuant to section 1819 began when the FDIC
became the receiver — one year and seven months before removal to
this Court.  (Docket No. 7 at p. 11.)  The FDIC counters that the
90-day period began on September 1, 2016, the same day the FDIC
filed for removal.  (Docket No. 10 at p. 19.)

　　　　　　　　In this district, "[i]t is not entirely clear
. . . if the ninety-day removal clock should [start] running when
the FDIC [is] appointed as a receiver, or . . . substituted as a
party."  See La Fosse v. Fed. Deposit Ins. Corp. for Doral Bank,
Civil No. 15-2427, 2016 WL 8674487, slip op. at 2 (D.P.R. Apr. 29,
2016) (Garcia-Gregory, J.) (holding that removal was time barred
whether tolling of the limitations period commenced on the

receivership date or substitution date).  The First Circuit Court of Appeals ruled previously that tolling begins when the FDIC becomes receiver of a failed bank.  Woburn Five Cents Sav. Bank v. Robert M. Hicks, Inc., 960 F.2d 965, 971 (1st Cir. 1991).  Tolling the period when the FDIC becomes receiver is consistent with the liberal philosophy of the Federal Rules of Civil Procedure and prevents the FDIC from engaging in "tactical removals."  Woburn, 960 F.2d at 969-71.  Statutory amendments occurring after the Woburn decision, however, indicate that the limitations period commences when the FDIC enters the litigation, not when the FDIC becomes receiver.

In 1991, the year Woburn was published, section 1819 lacked a limitations period for removal.  Courts instead relied on 28 U.S.C. section 1446(b) ("section 1446").[13] Id. at 968.  The relevant statute in this action, section 1819, has since been amended to include its own 90-day limitations period:

> "Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the **90-day period beginning on the date the action**, suit,

---

[13] At the time, the controlling language was located in section 1446(b).  Section 1446(b) has been amended 3 times (October 1996, November 2011, December 2011). The language now resides in 12 U.S.C. section 1446(b)(3), but remains the same.

or proceeding is filed against the Corporation **or the Corporation is substituted as a party.**"

12 U.S.C. § 1819(b)(2)(B) (emphasis added); see Buczkowski v. F.D.I.C., 415 F.3d 594, 596 (7th Cir. 2005).  The First Circuit Court of Appeals has not addressed the limitations period to removal pursuant to the amended section 1819.  In FDIC v. Keating, however, the First Circuit Court of Appeals evaluated removal pursuant to section 1819.  FDIC v. Keating, 12 F.3d 314, 315 (1st Cir. 1993).  In that case, the FDIC filed a motion for removal eighty-nine days after substituting as a party and roughly 105 days after being appointed receiver.  Keating, 12 F.3d at 315; FDIC v. Keating, 812 F. Supp. 8, 9 (D. Mass 1993).  The removal in Keating was held to be "timely."  12 F.3d at 315.

The language of section 1819(b)(2)(B) states unambiguously that the limitations period begins when "the Corporation is substituted as a party." 12 U.S.C. § 1819(b)(2)(B). As the FDIC notes, every circuit court examining the 90-day period set forth in section 1819 interpreted the limitations period to begin when the FDIC is substituted as a party.  See, e.g., F.D.I.C. v. N. Savannah Props., LLC, 686 F.3d 1254, 1259 (11th Cir. 2012) ("[B]eing appointed as receiver is not the same thing as being substituted as a party [. . .] [a party must] take some affirmative action beyond its appointment as receiver (such as filing a notice

of substitution) in order to be 'substituted as a party.'");
Buczkowski, 415 F.3d at 596 ("Substitution 'as a party' must mean
'as a party to the litigation.'  Reading this language to mean
'substituted as the failed bank's receiver' would turn the word
'party' into mush"); Dalton v. FDIC, 987 F.2d 1216, 1221 (5th Cir.
1993) ("Most cases concerning removal by the FDIC [. . .] involve
the question whether the FDIC's time to remove began to run when
it became receiver or when it was substituted as a party [. . .]
We have held that the time for removal begins to run "from the
date the FDIC 'is substituted as a party'").  The Court is
persuaded that the language of section 1819 indicates that the
limitations period is triggered by the FDIC's substitution, not by
the FDIC's receivership.

Vistas urges the Court to ignore the statutory
text, and instead apply Woburn, noting that this precedent has not
been explicitly overturned.  (Docket No. 7 at pp. 12 and 17.)
Woburn, however, is distinguishable from this case.  See
Buczkowski, 415 F.3d at 596 ("[T]here is no conflict — not, at
least, at the appellate level.  Woburn [. . .] [was] decided in
1991, before the amendment that gave § 1819(b) its current

text.").[14]  In Woburn, the First Circuit Court of Appeals examined

28 U.S.C. § 1446(b), not the significantly different language found

in 12 U.S.C. § 1819(b)(2)(B).[15]  Additionally, this Court

emphasizes that in Woburn the First Circuit Court of Appeals stated

that while the Financial Institutions Reform, Recovery, and

Enforcement Act of 1989 provided an alternative means of removing

a case to the Resolution Trust Corporation, 28 U.S.C. § 1446(b)

still governed removal of FDIC cases.  Woburn, 930 F.2d at 968.

The First Circuit Court of Appeals explained that "Congress could

have drafted a similar provision for the FDIC if it wished similar

treatment for that entity."  Id.  Congress has provided an

alternative removal provision for the FDIC in the interim, thus,

Woburn is inapplicable to this case. Although Vistas argues that

section 1819 permits the FDIC to engage in practices contrary to

the policy considerations in Woburn, Congress authorized the FDIC

to engage in such practices.  See F.D.I.C v. Loyd, 955 F.2d 316,

---

[14] In Buczkowski, a district court, relying heavily on the policy considerations discussed in Woburn, began the section 1819(b)(2)(B) time period when the FDIC was appointed receiver. Buczkowski, 415 F.3d at 595.  The Seventh Circuit Court of Appeals reversed, finding Woburn inapplicable and noting that because Congress amended section 1819(b)(2)(B), the FDIC need no longer "play by the normal rules." Id. at 596.

[15] Compare 28 U.S.C. section 1446(b)(3) ("a notice of removal may be filed within 30 days after receipt by the defendant [. . .] from which it may first be ascertained **that the case is one which is or has become removable**.") with 12 § U.S.C. 1819(b)(2)(B) ("the Corporation may [. . .] remove any action [. . .] before the end of the 90-day period beginning on the date [. . .] **the Corporation is substituted as a party**.") (emphasis added)

328 (5th Cir. 1992) (noting the concerns presented in <u>Woburn</u> but stating "[the substitution approach is] a more practical means to accomplish the tasks Congress has set for the FDIC."); <u>see generally</u> <u>In re Rudler</u>, 576 F.3d 37, 50 (1st Cir. 2009) ("[the court] cannot rewrite the statute simply because we think a different method [. . .] would be more effective.")

Because the state law exception is inapplicable, the FDIC did not waive removal, and the FDIC timely filed the motion to remove, the Court has no basis to remand this action. Accordingly, Vistas motion to remand is **DENIED.**

**III. CONCLUSION**

Bautista's motion to alter or amend the August Order is **DENIED WITH PREJUDICE.** Vistas motion to remand is **DENIED WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 18, 2017.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE